# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The Arches Condominium Association | : | |
| | : | |
| v. | : | No. 361 C.D. 2015 |
| | : | |
| Lawrence Robinson, | : | Argued: October 5, 2015 |
| | : | |
| Appellant | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                     HONORABLE PATRICIA A. McCULLOUGH, Judge
                     HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**                                    **FILED:  December 29, 2015**


Lawrence Robinson appeals from the May 15, 2014 Order of the Court of Common Pleas of Philadelphia County (trial court) that found in favor of The Arches Condominium Association (Association) and awarded the Association $27,355.68, $26,206.68 of which was for attorney's fees related to the Association's action to collect unpaid condominium (condo) fees and assessments. Robinson challenges the award of attorney's fees. Also before this Court is the Association's Motion to Strike Brief and Quash Appeal (Motion to Quash), which asserts that Robinson waived all of his issues for appellate consideration by not filing a timely Motion for Post-Trial Relief (post-trial motion) as required by Pennsylvania Rule of Civil Procedure No. 227.1(c) but filed, instead, a Motion for Reconsideration (Reconsideration Motion) from the trial court's May 15, 2014

Order. For the following reasons, we deny the Motion to Quash and affirm the trial court's award of attorney's fees to the Association.

## I.    Background

Robinson owns a condo in The Arches. The Association is the entity responsible for maintaining The Arches and enforcing the Uniform Condominium Act[1] (Act) and The Arches' By-Laws and Declaration. The Association, through its management company, charges condo owners monthly condo fees, as well as occasional special assessments. In February 2011, the Association sent Robinson a demand letter seeking payment of $939.83 in assessments, late fees, and collection costs. This letter also advised Robinson that, if he did not pay and the matter was litigated, he would be responsible for the Association's attorney's fees. Robinson did not pay the outstanding fees.

In 2011, the Association filed a civil complaint in the Philadelphia Municipal Court (municipal court) seeking $3,942.44. It obtained a judgment against Robinson on January 31, 2012 from the municipal court in the amount of $1,539.36, which included outstanding assessments, late fees, and attorney's fees. Robinson appealed that judgment and filed a praecipe for the Association to file a complaint or risk Judgment *Non Pros*. In response, the Association filed a civil complaint (Complaint) in the trial court asserting that Robinson had unpaid condo fees and assessments, late fees, and attorney's fees in the amount of $12,380.66, which included the original $3,942.44. A three year long legal battle ensued in which the Association ultimately asserted that Robinson owed it $215,357 in

---

[1] 68 Pa. C.S. §§ 3101-3414.

2

unpaid condo fees, special assessments, and late fees from 2008 through 2014.[2] In addition to the proceedings described above, during this three year period: the Association obtained two default judgments against Robinson due to his failure to timely answer the Complaint, which were ultimately opened; an arbitration panel found in the Association's favor, but awarded it only $2,477.00, which the Association appealed to the trial court; the Association sought summary judgment but was denied; and the matter went to trial on May 13, 2014. By the time the trial ended, the Association's attorney's fees had reached $26,206.68.

The trial court held a non-jury trial, during which the Association presented documentary evidence and the testimony of the president of its management company, Kevin McGrath, who described the outstanding fees and his belief, based on his thirty-five years as a property manager, that the attorney's fees incurred to collect those fees were reasonable. In defense, Robinson offered his own testimony and documentary evidence. During the trial, the parties partially agreed to some of the outstanding fees. Following the trial, the trial court entered the May 15, 2014 Order, which stated that the: "Court enters judgment in favor [of] Plaintiff and against Defendant in the amount of $27,355.68. The Court calculated the amount of judgment as follows: $239 assessment shortfall, $500 snow removal assessment, $300 capital investment assessment, $104 late fee and $26,206.68 attorney's fees." (Trial Ct. Order.)

---

[2] The unpaid fees were the result of Robinson underpaying his monthly condo fee by amounts ranging from five dollars to nineteen dollars per month between those years. The Association averred that Robinson also did not pay a special garage assessment of $625, a capital assessment of $300, and a snow assessment of $500. Additionally, the Association sought the payment of late fees and interest on the outstanding amounts, as well as attorney's fees, pursuant to the Act and The Arches' By-Laws and Declaration.

3

On May 28, 2014, Robinson filed the Reconsideration Motion asking the trial court to reconsider awarding the Association the full $26,206.68 in attorney's fees, to which the Association responded. While the Reconsideration Motion was outstanding, Robinson filed this appeal on June 16, 2014.[3] The trial court denied the Reconsideration Motion on June 19, 2014. On July 8, 2014, the trial court directed Robinson to file a Concise Statement of Errors Complained of on Appeal (Statement) pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Robinson's Statement claimed that the trial court abused its discretion and erred in awarding the full amount of the Association's attorney's fees because: the Association did not prove that those fees were reasonable; the trial court awarded only a small amount of the damages sought; and a substantial portion of those fees were incurred pursuing invalid charges.

In its 1925(a) opinion supporting its Order, the trial court explained that it acted well within its discretion by awarding attorney's fees because both the Act and The Arches' Declaration expressly gave the Association the right to collect reasonable attorney's fees and Mr. McGrath's credited testimony established that both the rate charged and the time spent were reasonable and competitive for this type of work. Citing Mountain View Condominium Association v. Bomersbach, 734 A.2d 468 (Pa. Cmwlth. 1999), the trial court rejected Robinson's argument that the fees were disproportionate, concluding that the full amount of attorney's fees were warranted because the litigation had lasted for at least three years, Robinson received numerous notices about the delinquencies and did nothing

---

[3] The appeal was filed in the Superior Court, which transferred the matter to this Court on February 6, 2015.

4

about them, and there were numerous delays as a result of Robinson's failure to timely respond to the Complaint. Finally, the trial court concluded that Robinson had waived all of his issues on appeal by not timely filing a post-trial motion pursuant to Rule 227.1(c) and, instead, filing the Reconsideration Motion. The trial court noted that while this Court, in Linder v. City of Chester, 78 A.3d 694, 698 (Pa. Cmwlth. 2013) (single judge op.), held that a motion for reconsideration can function as a post-trial motion for the purposes of preserving issues for appellate review, the Supreme Court had not yet adopted that position, but has stated that "a motion for reconsideration is not a post-trial motion," Moore v. Moore, 634 A.2d 163, 167 (Pa. 1993). The trial court further noted that the Reconsideration Motion was not filed within ten days of the May 15, 2014 Order.

Robinson's appeal is now ready for this Court's review. However, before we consider the merits of Robinson's appeal, we must first address the Association's Motion to Quash.

## II. Motion to Quash

On July 6, 2015, the Association filed the Motion to Quash requesting that this Court strike Robinson's brief and quash his appeal because he did not timely file the post-trial motion required by Rule 227.1(c) and, therefore, did not preserve any issues for appellate consideration. Robinson responded that he had preserved his issues for appellate review because the Reconsideration Motion was timely and functioned as a post-trial motion. Rule 227.1(c) requires, in relevant part, that a party that wishes to appeal shall file post-trial motions within ten days after a

5

verdict "or the filing of the decision in the case of a trial without jury."[4]  Pa. R.C.P. No. 227.1(c).

---

[4] The fact that the trial court's Order uses the term "judgment" is not dispositive. Our Supreme Court and the Superior Court have held that where a trial court issues a decision or verdict *following a trial*, at which evidence was presented, thereby requiring the trial court to make findings of fact and conclusions of law based on that evidence, post-trial motions are required to be filed in order to preserve issues for appellate review. Motorists Mutual Insurance Company v. Pinkerton, 830 A.2d 958, 962-63 (Pa. 2003); Chalkey v. Roush, 805 A.2d 491, 495-96 (Pa. 2002); Baughman v. State Farm Mutual Automobile Insurance Company, 656 A.2d 931, 932-33 (Pa. Super. 1995). See also Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets, 52 A.3d 1233, 1248-49, 1251 (Pa. 2012) (holding that issues are not waived for failing to file post-trial motions from a remand proceeding where no evidence was presented because no post-trial motions were required under those circumstances). This is so even if a trial court's order erroneously indicates that it is a judgment, rather than a verdict. Shonberger v. Oswell, 530 A.2d 112, 113 n.1 (Pa. Super. 1987). Here, the trial court held a non-jury trial at which the Association and Robinson presented evidence from which the trial court had to make findings of fact and conclusions of law regarding Robinson's liability to the Association. Accordingly, the trial court's Order was a verdict or decision from which post-trial motions were required to be filed.

We will address the merits of the appeal, although it does not appear from the docket that the trial court has entered a final order in this matter as required by Pennsylvania Rule of Appellate Procedure 301(a). "It is the order of the trial court disposing of a motion for post-trial relief that has been reduced to judgment which comprises the final order in the case from which an appeal must be filed within thirty days." McCormick v. Northeastern Bank of Pennsylvania, 561 A.2d 328, 330 (Pa. 1989). Technically, the June 19, 2014 order did not enter judgment, but merely denied reconsideration and, therefore, it appears that the appeal on the merits could be quashed for lack of an entry of judgment. However, our Courts have held, in a case where "the decision of the trial court dismissing appellants' motion for post-trial relief was not reduced to judgment by praecipe of either party as required by [Pa. R.A.P. 301]" that, "in the interests of judicial economy, we shall 'regard as done that which ought to have been done.'" McCormick, 561 A.2d at 330 n.1 (quoting Commonwealth v. Allen, 420 A.2d 653, 654 n.3 (Pa. Super. 1980)); Southeastern Pennsylvania Transportation Authority v. Hussey, 588 A.2d 110, 110 n.1 (Pa. Cmwlth. 1991). This is particularly so where, as here, the procedural irregularities "have not significantly hampered our ability to review the issues raised." Gemini Equipment Company v. Pennsy Supply, Inc., 595 A.2d 1211, 1213 n.2 (Pa. Super. 1991).

Robinson argues that case law establishes that a motion for reconsideration can function as a post-trial motion for the purposes of preserving issues for appellate review and that the Rules of Civil Procedure should not be "construe[d] . . . so narrowly as to allow a minor procedural error to affect the substantive rights of the litigants." Gemini Equipment Company v. Pennsy Supply, Inc., 595 A.2d 1211, 1214 (Pa. Super. 1991); see also Linder, 78 A.3d at 696-97. Robinson asserts that the trial court's reliance on Moore is misplaced because that case involved the Superior Court erroneously treating a mother's motion for reconsideration, which is permitted in custody matters, as a post-trial motion, which is not permitted in custody matters. According to Robinson, his Reconsideration Motion requested relief that were proper bases for a post-trial motion under Rule 227.1(a)(4) - the modification of or change to the trial court's award of attorney's fees. Pa. R.C.P. No. 227.1(a)(4).

Robinson further asserts that his Reconsideration Motion should be treated as timely because the Rules of Civil Procedure should be liberally construed and the Reconsideration Motion was filed "well within the period to give the trial court sufficient time to reconsider and/or modify its order." (Robinson's Br. at 33.) Robinson contends that even when post-trial motions are filed beyond the ten-day period, if the trial court chooses to address them and the opposing party does not set forth objections alleging specific facts demonstrating prejudice, an appellate court should not review the trial court's decision to address the "untimely" post-trial motions. Millard v. Nagle, 587 A.2d 10, 11-12 (Pa. Super. 1991). Here, Robinson points out, the Association has not alleged that it would be prejudiced and, therefore, we should decline to quash his appeal due merely to a technical violation of the rules.

7

The Association responds that the Reconsideration Motion, filed more than ten days after the May 15, 2014 Order, was not a timely post-trial motion and, therefore, Robinson's issues are not preserved for appellate review. According to the Association, Linder and Gemini Equipment do not support the conclusion that the Reconsideration Motion here should be treated as a timely post-trial motion because, in those cases, the motions were timely filed within the ten-day period set forth in Rule 227.1(c).

In Linder this Court held, in a reported single-judge opinion, that a motion for reconsideration can fulfill the issue-preservation function of a post-trial motion. Linder, 78 A.3d at 695, 698.[5] Linder reviewed persuasive authority from the Superior Court holding "that courts should be flexible in considering whether filings may be construed as motions for post-trial relief, although not styled as such." Id. at 696 (citing De Lage Landen Financial Services, Inc. v. Rozentsvit, 939 A.2d 915, 922-23 (Pa. Super. 2007); Mackall v. Fleegle, 801 A.2d 577, 580 n.1 (Pa. Super. 2002); Gemini Equipment, 595 A.2d at 1213). Specifically, Linder noted that, in Gemini Equipment, the Superior Court held, pursuant to Rule 227.1(a)(4), that "'a post-trial motion may ask the court to affirm, modify or change its decision'" and because "the motion for reconsideration served this function . . . [it] preserve[d] Gemini Equipment's issues." Linder, 78 A.3d at 696 (quoting Gemini Equipment, 595 A.2d at 1214). Linder further distinguished Moore in the manner Robinson does in this appeal – that the Superior Court erred in treating a permissible motion for reconsideration as an impermissible post-trial

---

[5] Pursuant to this Court's internal operating procedures, "a single-judge opinion . . ., even if reported, shall be cited only for its persuasive value and not as a binding precedent" except in election law matters. 210 Pa. Code § 69.414(b), (d).

motion in a custody case. Id. at 697. We find Linder and the Superior Court's analysis on this issue persuasive and conclude that the Reconsideration Motion functioned as a post-trial motion because, as in Gemini Equipment, it requested relief in accordance with Rule 227.1(a)(4).

However, this does not end our analysis because, unlike in the above cases where the motions were filed within the *ten* (10) day period set forth in Rule 227.1(c), the Reconsideration Motion here was filed *thirteen* (13) days after the May 15, 2014 Order and, thus, was not timely. Robinson essentially argues that the timing of his filing is not determinative because trial courts may consider an untimely post-trial motion, so long as it still has jurisdiction, absent an objection from the opposing party that sets forth how it will be prejudiced, and there was no objection here. Millard, 587 A.2d at 11-12.

Robinson is correct that a trial court "has discretion to consider untimely motions for [post-trial] relief because the ten-day time period is not a jurisdictional requirement but merely a procedural rule, thereby permitting the court to disregard any defect or error of procedure that does not affect the parties' substantial rights." King v. Riverwatch Condominium Owners Association, 27 A.3d 276, 278 (Pa. Cmwlth. 2011). In situations "where a party files untimely post-trial motions and the opposing party objects, the trial court must consider the nature of the derelict party's default as well as the resulting prejudice to the objecting party." Id. (citing Carlos R. Leffler, Inc. v. Hutter, 696 A.2d 157, 166 (Pa. Super. 1997)). "[A] trial court may elect to overlook the procedural default if no objection is made," but "[i]f objections are lodged, . . . the trial court may still, in its discretion, elect to entertain the motion or dismiss the motion, but must first consider whether the

9

objecting party would be prejudiced by the court's ruling." Carlos R. Leffler, Inc., 696 A.2d at 166. For example, a post-trial motion filed one day late did not "upset effective court procedure or prejudice[] the adverse parties" and, therefore, the trial court should have considered the merits of the post-trial motion. Id. at 166-67. Thus, where post-trial motions are untimely, a trial court need not address the merits and, if it does not, all issues are waived on appeal. Kennel v. Thomas, 804 A.2d 667, 668 (Pa. Super. 2002). However, if the trial court, acting in its discretion, accepts the untimely post-trial motions and rules on the merits thereof, the appellate court should treat the issues as having been properly preserved for appellate review. Behar v. Frazier, 724 A.2d 943, 945-46 (Pa. Super. 1999).

Here, the Association did not object to the Reconsideration Motion as being either the wrong motion or untimely, and did not allege prejudice, but instead responded to its merits. Although the trial court issued the order denying the Reconsideration Motion on June 19, 2014, three days after Robinson filed his appeal, the trial court did not express a reason for the denial. The trial court subsequently directed Robinson to file the Statement. Then, in its 1925(a) opinion, the trial court specifically addressed the merits of the issues raised in the Statement,[6] which were generally included in the Reconsideration Motion, while also concluding that all of the issues were waived because Robinson had not filed timely post-trial motions to the May 15, 2014 Order. It is not clear from its

---

[6] We acknowledge that the waiver resulting from the failure to file post-trial motions is not remedied by listing the issue in a statement of errors complained of on appeal because, when the trial court addresses the issues in the statement, it no longer has jurisdiction to change its rulings. The Ridings at Whitpain Homeowners Association v. Schiller, 811 A.2d 1111, 1114 n.4 (Pa. Cmwlth. 2002); Diener Brick Company v. Mastro Masonry Contractor, 885 A.2d 1034, 1039 (Pa. Super. 2005).

10

1925(a) opinion whether the trial court considered the Reconsideration Motion a post-trial motion.  Finally, we observe that the purpose of filing post-trial motions is to allow the trial court the opportunity, while it still has jurisdiction, to correct the errors asserted therein without expending the time and judicial energy in filing an appeal to the appellate courts.  Diamond Reo Truck Company v. Mid-Pacific Industries, Inc., 806 A.2d 423, 430 (Pa. Super. 2002).  The trial court concluded, in its 1925(a) opinion, that it did not abuse its discretion or make any errors that needed to be corrected.  Given these factors we conclude that, under these circumstances, the Reconsideration Motion filed here can be considered a proper post-trial motion that preserved Robinson's issues for appellate review.  Behar, 724 A.2d at 945-46.  Accordingly, we deny the Motion to Quash and now consider the merits of Robinson's appeal.

### III.    Trial Court's Award of Attorney's Fees

Robinson argues that the trial court abused its discretion in awarding attorney's fees in this matter because the Association did not meet its burden, through the presentation of expert testimony, of proving the reasonableness of those fees.  Robinson asserts that Mr. McGrath's testimony is not sufficient because he is not an attorney with knowledge or experience of court proceedings or the time and expense involved in such proceedings.  Robinson alternatively argues that the trial court should not have awarded the *full* amount of attorney's fees because:  it awarded the Association only a fraction of the amount requested; the Association, not Robinson, drew out the litigation; and the Association violated Section 3314(b) of the Act, 68 Pa. C.S. § 3314(b), by charging interest, in the form of a late fee, at a rate exceeding the amount permitted, which inflated the amount the Association sought from Robinson.  Awarding attorney's fees under these

11

circumstances, Robinson asserts, produces a windfall for the attorney and encourages condo associations to seek inflated charges against its members.

The Association counters that the trial court's award of the full amount of attorney's fees was warranted because recovery of the fees are expressly permitted by the Act and The Arches' Declaration, it took three years of litigation to get Robinson to pay *any* outstanding condo fees and assessments, and the fees requested are fair and reasonable. The Association contends that, pursuant to Mountain View, 734 A.2d at 471, it is not required to accept less than the full sum to which it is entitled and the fact that the fees may be disproportionate to the amount actually awarded does not mean the trial court abused its discretion. As to the amount awarded, the Association asserts that this is a matter for the trial court's discretion and it was not required to present expert testimony regarding the reasonableness of the fees requested. Here, according to the Association, the trial court reviewed the evidence, including the history of the litigation, Mr. McGrath's testimony that, in his decades of experience the rate charged was reasonable and competitive for the work involved and the majority of the fees had been paid, and concluded that the attorney's fees were fair and reasonable.

"When reviewing the decision of a trial court in a non-jury trial, we must determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed an error of law." The Ridings at Whitpain Homeowners Association v. Schiller, 811 A.2d 1111, 1113 n.2 (Pa. Cmwlth. 2002). However, "'[a]ppellate review of a trial court's order awarding attorney's fees to a litigant is *limited* solely to determining whether the trial court

*palpably abused its discretion* in making a fee award.'" Id. at 1116 (quoting Thunberg v. Strause, 682 A.2d 295, 299 (Pa. 1996)) (emphasis added).

Section 3302(a)(4) permits condo associations to "[i]nstitute, defend or intervene in litigation . . . in its own name on behalf of itself . . . on matters affecting the condominium" and Section 3315(a) gives the Association the authority to recover "reasonable costs and expenses of the association, including legal fees, incurred in connection with collection of any sums due the association by the unit owner." 68 Pa. C.S. §§ 3302(a)(4), 3315(a). Section 3315(f) states that "[a] judgment or decree in any action or suit brought under this section *shall* include costs and reasonable attorney's fees for the prevailing party." 68 Pa. C.S. § 3315(f) (emphasis added). Similarly, The Arches' Declaration authorizes the Association to collect "all expenses of the Executive Board, including reasonable attorneys' fees, incurred in the collection of the delinquent assessment by legal proceedings or otherwise." (Declaration, Article XIV, Section 14.6.)

In reviewing the reasonableness of attorney's fees, our Supreme Court has explained that the amount of attorney's fees is

> peculiarly within the discretion of the court of first instance. *Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error*. . . . [T]he allowance or disallowance of counsel fees rests generally in the judgment of the court of first instance and its decision will not be interfered with except for palpable error.

In re LaRocca's Trust Estate, 246 A.2d 337, 340 (Pa. 1968) (internal quotation marks and citations omitted) (emphasis added). The Supreme Court further instructed that, in determining whether attorney's fees are reasonable, a trial court must consider numerous factors, including:

> the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of property in question.

Id. at 339.

This Court has addressed a trial court's award of attorney's fees in condo fee disputes where the fee was disproportionate to the amount awarded or the condo association did not prevail on all of its issues, focusing on the level of discretion a trial court exercises in such matters. In Mountain View, a condo association brought an action for damages in the amount of $1,200 in past due assessments. Mountain View, 734 A.2d at 469. Because of the nature of the ten year long litigation, which was described as "trench warfare," we held that the trial court did not abuse its discretion in awarding the condo association $46,548.64 in attorney's fees pursuant to Section 3315. Id. at 471. The trial court credited the testimony of the condo association's witness that the rates and time expended for the work product were fair and reasonable, held that the condo association had reasonably incurred the attorney's fees, and directed the owner to pay the fees with interest and costs. Id. at 469-70. In affirming, we observed, as the trial court did, that the

14

nature of the litigation warranted the full award, that Section 3315 and the condo's declaration were "crystal clear and unequivocally established" the condo association's right to collect attorney's fees, and the condo association was not "bound to accept something less than the full sum to which it was entitled." Id. at 471. We further held that the expenditure of $46,548.64 in attorney's fees was not unreasonable to recover $1,200 in outstanding condo association fees because of the nature of the litigation.[7] Id.

However, we have also held that a trial court does not abuse its discretion in awarding a homeowners' association only a portion of its fees where the association did not prevail on all of its claims and where the trial court conducted a thorough review of the record, which included a detailed worksheet on litigation expenses. The Ridings at Whitpain, 811 A.2d at 1116; accord Township of South Whitehall v. Karoly, 891 A.2d 780, 785 (Pa. Cmwlth. 2006) (holding that The Ridings at Whitpain does "not require a reduction in an attorney fee award for an unsuccessful complaint, but simply concluded that a trial court was justified in reducing the award if the record supported such a decision"). By contrast, we concluded that a trial court abused its discretion in awarding a $10,000 attorney fee by "arbitrarily choosing a figure unrelated to the actual expenses involved" rather than the actual amount incurred by a condo association to enforce the condo's

---

[7] The dissent, in Mountain View, would have adopted a rationale from federal case law requiring that there had to "be some rational relationship between the amount of loss suffered and attorney fees incurred in attempting to recover the loss" and a consideration of "the extent of a party's success." Mountain View, 734 A.2d at 472 (Smith, J., dissenting) (citing Hensley v. Eckerhart, 461 U.S. 424, 434-35 (1983); Hilferty v. Chevrolet Motor Division of the General Motors Corporation, No. CIV. A. 95-5324, 1996 WL 287276 (E.D. Pa. 1996)).

declaration.  <u>Centennial Station Condominium Association v. Schaefer Company Builders, Inc.</u>, 800 A.2d 379, 386 (Pa. Cmwlth. 2002).

This precedent indicates that, as long as the trial court reviews the record and considers factors such as the nature and length of the litigation, the responsibilities of the parties in affecting the nature and length of the litigation, and the competitiveness of the rate and time expended, it is difficult for an appellate court to hold that a trial court abused its discretion in issuing a particular award of attorney's fees.  Here, the trial court reviewed the record and considered these factors to conclude that the amount of attorney's fees claimed in this matter was fair and reasonable.

Although Robinson asserts that the Association could *only* establish the reasonableness of the requested attorney's fees through another *attorney's* expert testimony, he cites no authority to support this position.[8]  Moreover, while Mr. McGrath is not an attorney, he testified that, in his *thirty-five years* of experience in property management, he had worked with other law firms in the Philadelphia region who handled this type of collection work and the rate charged and the time expended in the three years of attempting to collect the delinquent condo fees, assessments, and late charges were reasonable and competitive.  (Hr'g Tr. at 45-47, R.R. at 37a-38a.)  Mr. McGrath further testified about the Association's attempts to collect delinquent assessments and fees from Robinson since 2011 and the

---

[8] Robinson cites <u>Wrenfield Homeowners Association, Inc. v. DeYoung</u>, 600 A.2d 960, 964 (Pa. Super. 1991), for the standard for reviewing reasonable attorney's fees and notes that, in that case, the homeowners' association presented expert testimony.  However, there is no indication in <u>Wrenfield</u> that expert testimony of an attorney is the only way to establish the reasonableness of attorney's fees.

litigation that ensued. (Hr'g Tr. at 48-49, R.R. at 39a.) The Association also presented evidence describing the time its counsel and others spent on this matter, which indicated that between February 3, 2011 and May 12, 2014 counsel's firm charged $125 per hour for its legal staff and $175 per hour for its attorneys, for a total of $26,206.68 in billable fees and $6,372.76 in unbillable fees. (Hr'g Tr. at 43-46, R.R. at 36a-38a.) The trial court reviewed this evidence and, using its particular "knowledge of the rate of professional compensation usual at the time and place," In re LaRocca's Trust Estate, 246 A.2d at 340 (citation omitted), concluded that the fees were reasonable and fair. This litigation may not have been as lengthy and contentious as that in Mountain View and may have not been "trench warfare," but the trial court accurately described it as a "litigious and tortuous battle." (Trial Ct. Op. at 2.)

The trial court cited the delays in this matter and Robinson's repeated opportunities to remedy the delinquencies before and during the litigation as reasons why its award of attorney's fees was warranted. (Trial Ct. Op. at 5-6.) However, Robinson asserts that it was the Association, not him, that caused the lengthy litigation in this matter and the Association should not be rewarded for its tactics. Robinson does not dispute that he did not pay his full monthly condo fees or the special assessments, which were the basis of the initial February 2011 demand letter from the Association. He asserts that he challenged the Association's actions in order not to have to make payment of what he considered "overinflated" fees.

However, the February 2011 demand letter requested just $939.83, inclusive of late fees and attorney's fees, to resolve the delinquency. Robinson did not pay

17

those fees, which required the Association to file the civil complaint with the municipal court at additional legal cost to the Association. After the municipal court directed Robinson to pay $1,539.36, *Robinson appealed* and, in filing the praecipe to file a complaint, *demanded* the Association file the Complaint or risk entry of Judgment *Non Pros*. The Association did so, now requesting $12,380.66 in delinquent fees and litigation costs.

In filing the Complaint *in response to Robinson's appeal and demand for a complaint*, the Association incurred additional legal fees that were compounded by Robinson's failure to timely respond to the Complaint and the entry and opening of multiple default judgments.[9] Although Robinson complains that the default judgments were because the Complaint and various documents were served at the wrong address, the docket and record indicates that the Association used the address that *Robinson gave as his address* in his appeal from the municipal court judgment.

The matter proceeded to arbitration in July 2013, and the arbitrators awarded the Association $2,477.00, including attorney's fees, an amount far less than the $12,380.66 the Association believed it was entitled to under the Act and its governing documents. The Association, which does not have to compromise "its rights under [its] Declaration and . . . decisional law," Mountain View, 734 A.2d at 471 (internal quotation marks omitted), appealed that decision. Seeking to end the

---

[9] When the first default judgment was opened, the trial court directed Robinson to file a response within twenty days of its August 31, 2012 order, which he did not do, and default judgment was again entered. This resulted in a second petition to open judgment, filed three months later, that was subject to oral argument before the judgment was opened.

litigation in December 2013, the Association filed a motion for summary judgment on the last day permitted by the trial court's case management order before the parties were directed to schedule pre-trial conferences, but that motion was denied.[10] The matter then proceeded to a bench trial in May 2014, which resulted in the Order presently before the Court.

Reviewing these circumstances, particularly Robinson's actions in requiring the Association to file the civil complaints in both the municipal court and trial court in an effort to obtain *any* payment from Robinson, with the level of deference to the trial court required by In re LaRocca's Trust Estate, 246 A.2d at 340, we conclude that there was no palpable error in the trial court's finding that the Association was entitled to its full legal fees in this matter. That the Association appealed the arbitrators' award that it believed was unfavorable under the Act, The Arches' Declaration, and case law does not place responsibility on the Association for the lengthy litigation in this matter.

Robinson further emphasizes that the trial court awarded only a small amount of the outstanding fees and assessments requested to support that the trial court abused its discretion in awarding the full amount of attorney's fees. The value of the judgment is a factor that should be considered in determining the reasonableness of the attorney's fee. Id. at 339. It is not, however, the only factor. Id. As discussed above, the trial court reviewed the record, including the other

---

[10] The Association's motion for summary judgment appears to be the first instance in which it sought more than the $12,380.66 demanded in the Complaint. Therein, the Association indicated that it now requested $129,708.23 in condo fees, assessments, late fees, and attorney's fees.

factors discussed in <u>In re LaRocca's Trust Estate</u> and concluded, in its discretion, that the attorney's fees were reasonable. While we have held that a trial court does not abuse its discretion if it reduces an award of attorney's fees based on the respective success of an association's attempt to recover fees, we also have held that no such reduction is required. <u>Township of South Whitehall</u>, 891 A.2d at 784; <u>The Ridings at Whitpain</u>, 811 A.2d at 1116.

As stated, a condo association is not required to compromise but may "stand on principal . . . to uphold the law" and "its rights under [its] Declaration and the decisional law" and is entitled to have its "attorney's fees be covered" when it does so. <u>Mountain View</u>, 734 A.2d at 471 (internal quotation marks omitted). "Any holding to the contrary would cause chaos in Condominium Associations whose compliant members would have to bear the cost of dealing with non-compliant members." <u>Id.</u> (internal quotation marks omitted). To require the other members of the Association to pay the attorney's fees associated with recovering the monthly condo fees and special assessments Robinson has a legal obligation to pay is contrary to the language in Section 3315(f), which requires the inclusion of "costs and reasonable attorney's fees for the prevailing party" on a judgment. 68 Pa. C.S. § 3315(f).

Finally, Robinson contends that all of the attorney's fees should not have been awarded because the Association attempted to collect more interest than permitted by Section 3314(b) by labeling the interest a late fee. Section 3314(b) states:

> Except for assessments under subsection (c), common expenses shall be assessed against all the units in accordance with the common

expense liability allocated to each unit (section 3208) in the case of general common expenses and in accordance with subsection (c) in the case of special allocations of expenses. Any past due assessment or installment thereof shall bear interest at the rate established by the association not exceeding 15% per year.

68 Pa. C.S. § 3314(b).

Section 3302(a)(11) permits condo associations to "[i]mpose charges for late payment of assessments and, after notice and opportunity to be heard, levy reasonable fines for violations of the declaration, bylaws and rules and regulations of the association." 68 Pa. C.S. § 3302(a)(11). The Association's Rules and Regulations permit it to charge a 10% late fee on any outstanding balance, which Robinson acknowledges. (Hr'g Tr. at 27-28, R.R. at 27a-28a; Robinson's Br. at 27-28.) However, this Court has expressed some disapproval of charging a compounded rate as a monthly late fee. Latch's Lane Owners Association v. Bazargani (Pa. Cmwlth., 2408 C.D. 2009, filed April 13, 2010), slip op. at 6 (holding that, although the "calculations may appear to result in [the a]ssociation charging her 74% per year if [it] had levied a compounded charge of 7% per month on the overdue installment," the condo association did not violate Section 3314(b) because it only charged the owner *a one-time penalty* of 7% of her outstanding payment).[11] Robinson contends that the charging of a monthly 10% late fee on the outstanding balance results in a compounded interest rate much higher than the 15% rate permitted by Section 3314(b) and disapproved of in Latch's Lane.

---

[11] Pursuant to Section 414 of this Court's Internal Operating Procedures, an unreported panel decision issued by this Court after January 15, 2008 may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414.

21

When this litigation began in February 2011, the Association requested only $939.83, which represented all of the outstanding amounts Robinson owed, including the collection costs as of that time. (Letter from Association's Counsel to Robinson (February 17, 2011).) At that time, the Association was not charging the late fee in the manner asserted by Robinson, but began doing so only after the accountant's auditor reviewed the Association's accounts in 2012 and indicated that the Association had not been calculating its late fees correctly.[12] (Hr'g Tr. at 68-69, R.R. at 50a.) Moreover, the Association was not awarded any late fee beyond that calculated on the actual amount the trial court awarded in the May 15, 2014 Order. As observed by the trial court, "the same amount of legal work is required to collect $1,000 or $50,000." (Trial Ct. Op. at 6-7.) Thus, while the Association's manner of calculating its late fees may be questionable, this is not a reason to find that the trial court palpably abused its discretion in awarding the full amount of attorney's fees in this matter.

For the foregoing reasons, the Association's Motion to Quash is denied, and the trial court's Order is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

---

[12] It appears that, at this time, the Association retroactively applied the late fee as directed by the auditor. (Hr'g Tr. at 68-69, R.R. at 50a.)

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Arches Condominium
Association                         :
                                    :
                                    :
           v.                       :   No. 361 C.D. 2015
                                    :
Lawrence Robinson,                  :
                                    :
              Appellant             :

# **O R D E R**

**NOW**, December 29, 2015, the Motion to Strike Brief and Quash Appeal filed by The Arches Condominium Association is hereby **DENIED**, and the Order of the Court of Common Pleas of Philadelphia County, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**